IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**CHARLES ERIC HUNT**                                                                           **PLAINTIFF**

**VERSUS**                                                         **CIVIL ACTION NO. 2:11cv45KS-MTP**

**MID SOUTH WAFFLES, INC.**                                                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment **[# 72]** filed on behalf of the Defendant, Mid South Waffles, Inc. The Court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is not well taken and should be denied. The Court finds specifically as follows:

## BACKGROUND

The Defendant, Mid South Waffles, Inc., is a Georgia corporation duly licensed to transact business in the state of Mississippi. It owns and operates the premises known as the Waffle House restaurant, located at 6737 Highway 49, Hattiesburg, Mississippi. The Plaintiff, Charles Hunt, is an adult resident citizen of the state of Alabama, residing at 2023 Flagstone Drive, Apartment 1803, Madison, Alabama.

The evidence reveals that Hunt, who was staying at the Holiday Inn in Hattiesburg, took a taxi from his motel to Roper's nightclub about 9:30 p.m. on Saturday night, December 4, 2010. The evidence further shows that Hunt apparently had

consumed no more than three beers during a four hour period while he and his fiancé, Misty Bond, and friend Jessica Kelly were celebrating Jessica's twenty-first birthday.

In the early morning hours of December 5, around 1:30 a.m., Hunt and his companions took a taxi from Roper's to the Waffle House restaurant identified above. The restaurant was then about half full, according to Hunt's testimony. However, all lounges and bars are required to close at 2:00 a.m. in the City of Hattiesburg, so by 2:16 a.m., the video surveillance in the Waffle House shows the restaurant was at full seating/service capacity.

The video shows three females are seated to the rear of the booth seat occupied by Misty Bond and Jessica Kelly. One male has taken a seat in the middle of the aisle dressed in a white shirt and white hat. At or around 2:25 a.m., a male standing and talking to the three ladies occupying the booth behind Jessica Kelly and Misty Bond began swinging his arm, striking Jessica Kelly in the back of the head. Kelly is seen leaning forward to try and avoid his strikes. Three seconds later the video shows Bond and Kelly protesting whereupon the man said "What are you gonna do, Bitch?" or "Excuse me, Bitch" and referred to Kelly and Bond at least twice as "bitches." Approximately twenty seconds later, the video shows Hunt trying to resolve the situation with his hands in his pockets.

Mid South Waffles employed a security guard to oversee the restaurant and it is undisputed that this security guard was on duty at the time of this incident. Within six seconds of Hunt approaching the offensive patrons, the video shows the security guard intervening in the situation. The video shows that at 2:26:11 a.m. Hunt was walking away, with his hands still in his pockets and one second later Hunt has turned entirely

away and the security guard is now seen talking to a waitress. The security guard is between Hunt and the offensive patron.

At 2:26:14 a.m. the video shows the assailant ignoring the security guard and landing a right hand to the jaw of Hunt. Hunt retreats further well past the booth where he was sitting and he is approached by another assailant, a black male, who had entered the restaurant earlier, at 2:26:07 a.m. At 2:26:23 a.m., the video shows the original assailant strike Hunt with a left hand punch to Hunt's face. Hunt characterizes the security guard's conduct as letting the incident occur without making any effort to stop the assault. At 2:26:31 a.m., the video shows Hunt was assaulted by a right hand blow from the second black male assailant.

According to the affidavit of Misty bond,

> After the attacks, no one from Waffle House nor the security guard would call the police department. I called the Hattiesburg Police Department on my cell phone. I asked the security guard to go into the parking lot and get tag numbers on the cars. He refused. After I headed that way to get the tag numbers myself he told me to not do so because the man who had struck Charles Eric Hunt had a gun. I asked him how he knew the man had a gun and he said he flashed it to him in order to get inside the building. I asked him if he was going to do anything about the attack on Charles Eric Hunt and he said "No."

The evidence reveals that Mid South Waffles, has not been able to identify or provide the name, address, or phone number of the security guard on duty that night. According to deposition testimony of John Fervier, the head of security for all restaurants owned by the Defendant, the security guard on duty was prohibited by Waffle House from using any force (or for that matter exertion or influence) to stop the assault on Hunt. According to the Contract for Security at the Waffle House restaurants developed by Fervier, the use of force is only permitted to protect the life of a customer,

-3-

not from a general assault.  Fervier further testified that the security guard was hired only from 11:00 p.m. to 4:00 a.m. on Thursday, Friday, and Saturday nights, and that the only purpose for the guard is for "crowd control."

Michael Super of Eagle Eye Security, LLC, was employed by Defendant for security staffing.  When asked how his employees were to deal with the "rowdy customers" contemplated in the Security Agreement, he responded:

> My guys were basically, I guess, a cushion or just a presence there other than the employees of the Waffle House, the waitresses and the cooks. They were to try and keep the noise level down, because, obviously, if they couldn't be heard, the orders would get wrong, or they wouldn't be able to hear the orders.
>
> And then if you had somebody – and, of course, at that time in the morning, it's a known place for people who have been drinking all evening to come and get food before they go home. So if we had somebody who was being "rowdy," according to [Contract for Security], they were just to verbally tell them, "Be more respectful, or else we're going to have to ask you to leave."

Further, when questioned regarding the contracted-for duties of the Eagle Eye Security guard with respect to preventing an ongoing assault on a customer, Super replied that "At that point, they would be no more of a person to go to than a cook would have been."

In conjunction with the deposition of Major Hardy Simms of the Hattiesburg Police Department (HPD), records of "Address Activity" were produced showing the number of calls received by HPD at two restaurants, both owned and operated by Defendant: 6737 Highway 49 (where Plaintiff was assaulted) and 6512 Highway 49 (a second Waffle House located in close proximity).

In the three years immediately preceding the attack on Hunt, from 2008-2010, at

the 6737 Highway 49 location, the police were called three hundred ninety times. Fifty-six of those calls were for fights or disturbances between patrons. Further, of the fifty-six fights or disturbances, only eight of those took place outside of the "weekend nights" of Friday night, Saturday night, or Sunday morning.

The other Waffle House in the vicinity, located at 6512 Highway 49, also owned and operated by Defendant, had four hundred fifty-three police calls over the same three year period in the "Address Activity" log kept by HPD. Of those four hundred fifty-three calls, seventy-eight were for fights or disturbances necessitating police involvement. Again, in a similar pattern, of those seventy-eight fights or disturbances, sixty-six occurred between Friday night and Sunday morning.

James Miller, Divisional Manager in charge of the Waffle Houses in the Hattiesburg area, also testified based on his experience working at the Waffle House where Hunt was assaulted, that approximately seventy percent of the customers coming into the restaurant were intoxicated on a typical Saturday night. Miller acknowledged that as Divisional Manager, he knew of fights occurring at the location where Hunt was assaulted both on their property, and in parking lot of Stuckey's, which is immediately adjacent to the parking lot of the Waffle House, and is not separated by any physical boundary. Additionally, Miller also acknowledged that he knew that the Stuckey's was supposed to be open 24-hours a day, but chose to close their business from approximately 1:00 a.m. to 4:00 a.m. on Saturday nights such as the one in question.

Ruby Daniels, a long-time employee of Waffle House who was present the night Hunt was attacked, acknowledged that the HPD would come to the restaurant "every weekend to clear out the parking lot." Additionally, her testimony indicated that she

witnessed a similar fight between rowdy patrons within the six months prior to the assault on Hunt wher, "there were too many people sitting in the booth by the back door going to the bathroom, and someone opened the door and hit somebody, and that fight started like that."  In her estimation, on a Saturday night such as the one where Hunt was attacked, Daniels estimated that seventy-five percent of the patrons at Waffle House were intoxicated and crowded into the restaurant having come from area clubs.

On March 3, 2011, Hunt filed a complaint against Defendants Waffle House, Inc. and Mid South Waffles, Inc.  The complaint was later dismissed against Defendant Waffle House, Inc.  Hunt's complaint asserted a sole claim of "Duty to Prevent Attack."  Defendant filed an answer to the complaint, generally and specifically denying the Hunt's claims and has now moved for summary judgment.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); and see *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a

genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.

*Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

The law governing a "premises liability" case against a commercial property owner involving the criminal act of a third party is guided by the traditional elements of any premises negligence claim. To avoid summary judgment a plaintiff must show: "1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) damages; and (4) a causal connection between the breach and the damages, such that the breach is the proximate cause of the damages." *Double Quick v. Lymas*, 50 So. 3d 292, 298 (Miss. 2010) (citing, *Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.*, 519 So.2d 413, 416 (Miss.1988)) . "Although not an insurer of an invitee's safety, a premises owner owes a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of another." *Double Quick*, 50 So.3d at 298 (citing *Simpson v. Boyd*, 880 So.2d 1047, 1051 (Miss.2004)). Foreseeability may be established by proving that the defendant had "(1) actual or constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists on the premises." *Double Quick*, 50 So.3d at 298, (citing *Corley v. Evans*, 835 So.2d 30, 38–39 (Miss.2003) and *Lyle v. Mladinich*, 584 So.2d 397, 399 (Miss.1991)).

Generally, "criminal acts can be intervening causes which break the causal connection with the defendant's negligent act, if the criminal act is not within the realm of reasonable foreseeability." *Double Quick*, 50 So.3d at 298 (citing *O'Cain v. Harvey Freeman & Sons, Inc.*, 603 So.2d 824, 830 (Miss.1991); *Touche Ross v. Commercial Union Ins.*, 514 So.2d 315, 324 (Miss.1987); and *Robinson v. Howard Bros. of Jackson*, Inc., 372 So.2d 1074, 1076 (Miss.1979)).

**ANALYSIS**

Hunt asserts that he has produced ample relevant and admissible record evidence to support all necessary elements of his claims and overcome Defendant's Motion for Summary Judgment in the form of video surveillance, still photographs, security manuals, contracts for security, and extensive deposition testimony from the Plaintiff, eye-witnesses, employees, managers, and the Director of Security for Defendant.  Hunt goes on to contend that the existence of the elements of duty and breach are essentially uncontested by Defendant in it's Motion for Summary Judgment, and that his claim of damages has similarly remained unchallenged by Defendant's motion.  According to Hunt, there is remaining the issue of causation, which Defendant's motion contests on grounds of foreseeability, cause-in-fact and the alleged existence of a superseding/intervening cause.

**Foreseeability**

Defendant argues that there is no proof that Mid South Waffles, Inc. had "actual or constructive knowledge of the assailant's violent nature."  Indeed, it is undisputed that the identity of the assailant is unknown.  Therefore, according to Defendant, the only way Hunt can establish foreseeability is by showing the Defendant had an actual or constructive knowledge of an "atmosphere of violence," of which Defendant contends there is no such proof.  An atmosphere of violence may be proved by "the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the premises." *Corley v. Evans*, 835 So.2d 30, 38 -39 (Miss., 2003).

Defendant states that the only proof put forward by Hunt is a log of calls to the Hattiesburg Police for service to the premises of the Waffle House restaurant, which are summarized above. Defendant argues these call logs do not provide any proof whatsoever that any violent crime was committed at the Waffle House restaurant or even nearby because no incident reports or arrests reports have been produced. According to Defendant, the logs produced merely provide a list of calls for service to the premise and do not establish that any crime took place.

On this motion, where the Court is required to view the evidence in the light most favorable to the non-moving party, the Court finds that Hunt's evidence creates a genuine issue of fact regarding a pattern of criminal activity both in the "general vicinity" of and "on the premises" where he was injured. Further, not only is an issue as to an overall pattern of criminal activity apparent, but upon a closer examination of the evidence, Hunt has created a triable issue as to a specific pattern of violence which closely mirrors the circumstances which directly led to his injuries. Defendant is not entitled to summary judgment on the grounds of foreseeability.

**Proximate Cause**

Defendant contends that Hunt cannot prove any action or inaction of the Defendant was the "proximate cause" of his damages. Proximate cause is the "cause which in natural and continuing sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Titus v. Williams*, 844 So. 2d 459, 466 (Miss. 2003), *McIntosh v. Victoria Corp.*, 877 So. 2d 519

(Miss. Ct. App. 2004).  Proximate cause has two separate and distinct concepts: 1) cause in fact; and 2) foreseeability.  *Davis v. Christian Brotherhood Homes of Jackson, MS*, 957 So.2d 390, 404 (Miss. Ct. App. 2007) (quoting *Johnson v. Alcorn State Univ.*, 929 So. 2d 398, 411 (Miss. App. 2006)).  Foreseeability means "that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others."  *Id.*  "Cause in fact" means "that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred."  *Id.*  "Cause in fact" requires a plaintiff to pass the "but for" test – i.e., that "but for the alleged negligent act or omission, the injury would not have occurred.  To survive summary judgment on this element, there must be evidence that "had [the property owner] provided the security measures which [Plaintiff] claims [the property owner] had a duty to provide, [the shooter] would not have shot [Plaintiff] … ."  *Davis*, 957 So.2d at 406.

      Defendant argues that Hunt has failed to produce any evidence to show "cause in fact," in that there is no evidence that other or different security measures would have prevented the incident.  It is true that Hunt has not designated an expert in premises security or law enforcement, but this is not fatal to Hunt's claims as argued by Defendant.

      A review of the evidence shows that police had been called from the Defendant's address where Hunt was injured three hundred ninety times in the previous three year period and that seventy-eight of those calls were for fights or disturbances, with the vast majority of those altercations occurring on the weekend nights.  Deposition testimony from two employees familiar with the atmosphere at the Waffle House in question at 2:00 a.m. every Saturday night shows that the premises was packed to and beyond

capacity with people streaming in from surrounding night clubs, approximately 70-75% of whom were intoxicated.

Hunt argues additionally that the evidence shows the Defendant essentially didn't do anything to halt or prevent the attack on him (or any of the other 78 reported assaults or disturbances in the three years prior), which begs the question of whether Defendant's policy of employing a "security guard" equipped with little more than a cell phone and instructions not to use any physical force or intervene in an ongoing assault was a substantial factor in bringing about his injuries. The court agrees.

The policy of Defendant in employing a security guard and then tethering him with a policy of not allowing him to use any stronger tool than vocal castigation clearly creates a triable issue of fact regarding causation relative to Hunt's injuries. Hunt has created an issue as to whether Defendant acted appropriately to quell the inherent and unavoidable problems which arise from catering to the regular influx of intoxicated club-goers. Hunt has provided sufficient evidence to raise such a question of material fact as to the element of causation, this question is ultimately for a jury to decide, and Defendant's request for summary judgment on this issue shall be denied.

**Superseding/Intervening Cause**

Defendant finally argues that even assuming there was a chain of causation, the actions of Hunt broke the chain because he instigated the incident and because the assault upon him was sudden, unexpected, and occurred in the heat of the moment. To support this argument, Defendant cites *Davis* 957 So.2d at 408-09; *Martin v. Rankin Circle Apartments*, 941 So.2d 854, 864 (Miss. Ct. App. 2006) (holding shooter's

appearance at apartment complex is an intervening cause); *May v. V.F.W. Post No. 2539*, 577 So.2d 372, 376-377 (Miss. 1991) ("[b]ecause of the spontaneity of the event in question, it is inconceivable that the VFW reasonably could have protected May from Triplett's attack"). In affirming summary judgment, the *Davis* court reasoned that "we find some truth in the following statement made by the trial court in ruling on this issue: 'you could have had a policeman or security guard at every corner in the complex, and it wouldn't have prevented what happened.'" *Id.* at 408. Defendant contends the same reasoning applies here and this Court should follow it to reach the same result.

However, the evidence suggests otherwise. Contrary to the Defendant's characterization that Hunt started the fight, Hunt contends that he simply and politely asked the group of men to stop hitting his girlfriend in the head and bumping their table. The security guard employed by Defendant was on the scene and intervened in the incident prior to any licks being passed. Once the fight ensued, he did little or nothing to prevent the ultimate injuries to Hunt even though he appeared to be in a position to do so but for the Defendant's policy preventing such intervention.

The video shows that Hunt's hands were in his pocket, and he argues it is clear that he wasn't looking for a fight, as Defendant seems to suggest. Upon being blind-sided by his first assailant, Hunt appears to turn away. He was already backpedaling when the first assailant struck him again and had been backed into a corner by the time his second visible assailant walked in from the exterior door and joined in the attack seconds later. The facts of the instant case are far divergent from those in the cases relied on by Defendant. It is clear that Hunt has created a genuine issue of fact regarding his claim.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[# 72]** filed on behalf of the Defendant, Mid South Waffles, Inc. is denied.

SO ORDERED AND ADJUDGED this the 29th day of February, 2012.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE